IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ANNA MARIA FLORES | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 5:19-cv-00747 |
| | § | |
| KIA MOTORS CORPORATION and | § | |
| KIA MOTORS AMERICA, INC. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW, Anna Maria Flores ("Plaintiff"), complaining of Kia Motors Corporation and Kia Motors America, Inc. ("Defendants"), and for cause of action would respectfully show the Court the following:

**I.**

1.   Plaintiff Anna Maria Flores is a resident of Karnes County, Texas.

2.   Defendant Kia Motors Corporation is a South Korean business organization, the precise nature of which is not known to the Plaintiff, and said Defendant is doing business in Texas, although not registered to do so. Said Defendant is engaged in business in this state within the meaning of that term as defined by § 17.042, Tex. Civ. Prac. & Rem. Code, and may be served with process pursuant to the Hague Convention, 20 U.S.T. 361 (February 10, 1969) as authorized by Tex. R. Civ. P. 108a. Pursuant thereto, service of process may be effected by serving a true and correct copy of the citation, with a copy of the petition attached thereto, to Kia Motors Corporation, Hyundai Kia Bldg., Seoul, Seoul, 06797, South Korea.

3.     Defendant Kia Motors America, Inc. is a California corporation doing business in Texas and may be served with citation through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

4.     Kia Motors Corporation and Kia Motors America, Inc. were and are in the business of designing and/or manufacturing and/or marketing and/or selling motor vehicles. These Defendants may be referred to collectively in this Complaint as "Kia."

## II.

5.     This is both a negligence action and product defect case arising out of a vehicular crash that occurred in the Western District of Texas where Plaintiff resides.

6.     Defendants have their principal places of business in states other than Texas. Jurisdiction, therefore, attaches pursuant to 28 U.S.C. §1332 since there is diversity of parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

## III.

7.     The vehicle at issue in this case is a 2015 Kia Sorento LX bearing vehicle identification number (VIN) 5XYKT4A63FG593253, (the "Sorento"). At the time of the incident, the Sorento was being driven by Anna Maria Flores.

8.     On August 20, 2018, the Sorento was contacted from the rear by another vehicle in a motor vehicle accident.

9.     The Sorento was designed by Kia

10.    The Sorento was manufactured by Kia.

11.    The Sorento was marketed by Kia.

12.    Kia designed and produced over 600,000 vehicles in 2015.

13. Of the 600,000 vehicles Kia manufactured in 2015, over 100,000 were Sorento model vehicles.

14. On or about August 20, 2018, Anna Maria Flores, was driving the Sorento eastbound on State Highway 72 when the Sorento was hit from behind.

15. At the time of the accident, Anna Maria Flores was properly seated in the driver's seat of the Sorento.

16. Anna Maria Flores was wearing her seat belt at the time of the motor vehicle accident.

17. The weak and defective design of the driver's seatback caused the seatback to collapse during the accident.

18. Because of the defects in the Sorento, particularly with the seatbacks, Anna Maria Flores suffered spinal cord injuries in the collision.

19. Anna Maria Flores is now quadriplegic.

20. The forces of impact and the load on the seatback were within the range of reasonably foreseeable impact conditions.

21. The Sorento had not been changed or altered, and was in substantially the same condition at the time of the accident that it had been in when it left the control of the manufacturer and introduced into the stream of commerce by Kia.

22. The defective design of the seat caused the driver's seat to collapse backwards, resulting in excessive loads and forces on Anna Maria Flores' spine.

23. The collapse of the seatback exposed Anna Maria Flores to enhanced injuries and caused her quadriplegia.

24. There is no design text or scientific study that states it is a good design principle to allow a person to be ejected out of their seat during a rear impact.

3

25.     Rearward ejection from a front seat in a rear impact can be dangerous to the rear seat occupants.

26.     The rearward ejection allowed by collapsing front seats may also lead to loss of vehicle control, which could help avoid subsequent impacts.

27.     The rearward ejection allowed by collapsing front seats may also lead to reduced effectiveness of restraints (which allow the body in the collapsed seat to slide rearward, and also become poorly positioned for possible subsequent forward impacts);

28.     The rearward ejection allowed by collapsing front seats may also lead to injury to rear seat occupants, such as children.

29.     The rearward ejection allowed by collapsing front seats may also lead to entrapment of rear seat occupants who may not be able to egress easily during post-crash hazards such as fires (i.e. Pinto rear impact problem).

30.     The above hazards are likely to lead to death or serious injury when the seats collapse in an uncontrolled fashion.

## FIRST CAUSE OF ACTION – STRICT PRODUCT LIABILITY

31.     The 2015 Kia Sorento, VIN 5XYKT4A63FG593253, that Plaintiff was driving was designed by Kia.

32.     The 2015 Kia Sorento, VIN 5XYKT4A63FG593253, that Plaintiff was driving was manufactured by Kia.

33.     The 2015 Kia Sorento, VIN 5XYKT4A63FG593253, that Plaintiff was driving was assembled by Kia.

34.     The 2015 Kia Sorento, VIN 5XYKT4A63FG593253, that Plaintiff was driving was marketed by Kia.

4

35.  The 2015 Kia Sorento, VIN 5XYKT4A63FG593253, that Plaintiff was driving was sold by Kia.

36.  The Sorento's driver's seat was defectively designed and such defects rendered the seat unreasonably dangerous and unfit for its intended purpose and foreseeable use.

37.  The Sorento's driver's seat was defectively manufactured and such defects rendered the seat unreasonably dangerous and unfit for its intended purpose and foreseeable use.

38.  The defective nature of the Sorento's driver's seat was a proximate and producing cause of Plaintiff's injuries, thus rendering Kia strictly liable.

39.  At the time the Sorento left the control of Kia, there were safer alternative designs for the Sorento and its driver's seat other than those that were used and caused Plaintiff's quadriplegia.

40.  The safer alternative designs would have either prevented or significantly reduced the risk of injuries and damages without substantially impairing the utility of the Sorento or its driver's seat.

41.  The safer alternative designs were economically feasible when the seat in the Sorento was designed.

42.  The safer alternative designs were economically feasible when the seat in the Sorento was manufactured.

43.  The safer alternative designs were technologically feasible when the seat in the Sorento was designed.

44.  The safer alternative designs were technologically feasible when the seat in the Sorento was manufactured.

45. The design of the Sorento and its seat were defective and unreasonably dangerous in that the Sorento seat failed to perform safely during the crash sequence allowing the front passenger seat to excessively deflect backward upon impact in a rear-end collision.

46. The design of the Sorento and its seat were defective and unreasonably dangerous in that the Sorento seat was improperly and inadequately tested by Kia.

47. The design of the Sorento and its seat were defective and unreasonably dangerous in that the Sorento was not crashworthy in rear impact collisions.

48. Kia knew or should have known of a potential risk of harm presented by the defective design of the Sorento seat, but negligently marketed the Sorento with the design and marketing defects.

49. The Sorento posed a risk of harm for the intended or reasonably anticipated use.

50. Kia knew or should have reasonably foreseen the risk of harm at the time the Sorento was sold, and that the product possessed a marketing defect.

51. The absence of proper warnings and/or instructions rendered the product unreasonably dangerous to the user of the product.

52. Kia's failure to warn or instruct of the danger posed by the Sorento seat was a proximate and producing cause of Plaintiff's injuries and damages.

53. Kia's defective design of the Sorento and its driver's seat was a proximate and producing cause of Plaintiff's injuries and damages.

54. Kia's defective manufacturing of the Sorento and its driver's seat was a proximate and producing cause of Plaintiff's injuries and damages.

55. Kia's defective marketing of the Sorento and its driver's seat was a proximate and producing cause of Plaintiff's injuries and damages.

6

56.   Plaintiff was not offered or afforded proper and adequate occupant protection in the foreseeable rear impact collision made the basis of this lawsuit.

57.   The unreasonably dangerous nature of the defects as outlined above created a high probability that drivers of Sorentos involved in rear impact collisions will sustain fatal or severe personal injuries as a result of ineffective protection afforded by the seat in rear impact collisions.

58.   The Sorento was also improperly and inadequately tested for occupant crash safety by Kia.

59.   The defective nature of the Sorento's seat and its lack of crashworthiness in rear impact collisions, as set forth above, rendered the Sorento and its seat unreasonably dangerous and was a proximate and producing cause of Plaintiff's injuries and damages as more specifically described herein.

60.   Plaintiff's injuries were proximately caused by the negligence of Kia in designing the Sorento and its driver's seat.

61.   Plaintiff's injuries were proximately caused by the negligence of Kia in manufacturing the Sorento and its driver's seat.

62.   Plaintiff's injuries were proximately caused by the negligence of Kia in testing the Sorento and its driver's seat.

63.   Plaintiff's injuries were proximately caused by the negligence of Kia in assembling the Sorento and its driver's seat.

64.   Plaintiff's injuries were proximately caused by the negligence of Kia in supplying the Sorento and its driver's seat.

65.   Plaintiff's injuries were proximately caused by the negligence of Kia in marketing the Sorento and its driver's seat.

66.   Plaintiff's injuries were proximately caused by the negligence of Kia in selling the Sorento and its driver's seat.

67.   Plaintiff's injuries were proximately caused by the negligence of Kia in instructing inadequate warnings for the Sorento and its driver's seat.

68.   Plaintiff's injuries were proximately caused by the negligence of Kia in managing product hazards in the Sorento and its driver's seat.

69.   Plaintiff's injuries were proximately caused by the negligence of Kia in providing inadequate warnings for the Sorento and its driver's seat.

70.   Plaintiff further claims, in the alternative, that a manufacturing defect was a producing cause of her personal injuries and provides notice of her intention to rely upon the Malfunction Doctrine (also known as the Malfunction Theory) as set forth in RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 3 (1998) as further support for her manufacturing defect claims.

71.   In this instance, it may be inferred that the severe and permanent injuries sustained by Plaintiff were caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, because the injuries suffered by Plaintiff: (a) were of the kind that ordinarily occur as a result of a product defect; and (b) were not, in the particular case, solely the result of causes other than the product defect existing at the time of the sale or distribution. RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 3 (1998).

72.   Plaintiff further claims that marketing defects in the product were a producing cause of Plaintiff's injuries and damages.

## SECOND CAUSE OF ACTION – NEGLIGENCE

73.   All preceding paragraphs are incorporated herein by reference.

8

74. Kia, including its employees, managers and executives acting in the course and scope of their employment were negligent in failing to warn consumers of the dangerous condition of the Sorento's seat as described more fully herein.

75. Kia, including its employees, managers and executives acting in the course and scope of their employment were negligent in failing to provide the occupants with a seat that is adequate to provide proper occupant restraint and injury prevention in rear impact collisions.

76. Kia, including its employees, managers and executives acting in the course and scope of their employment were negligent in failing to properly and adequately perform tests to assess the occupant protection performance and effectiveness of the seatback.

77. Kia, including its employees, managers and executives acting in the course and scope of their employment were negligent in failing to warn consumers of the dangerous condition of the Sorento and its seat.

78. Kia, including its employees, managers and executives acting in the course and scope of their employment were negligent in failing to provide occupants with a vehicle that is crashworthy in rear impact collisions.

79. Kia, including its employees, managers and executives acting in the course and scope of their employment were negligent in failing to properly and adequately perform tests to assess the crashworthiness of the Sorento in rear impact collisions.

80. Kia, including its employees, managers and executives acting in the course and scope of their employment were negligent in failing to properly manage product safety and product safety hazards.

81.     Plaintiff suffered and continues to suffer injuries and damages because of Kia's negligence and gross negligence.

82.     At all relevant times, Kia owed a legal duty to Plaintiff.

83.     At all relevant times, Kia owed a legal duty to Plaintiff to exercise reasonable care in designing, manufacturing, assembling, testing, marketing and selling the Sorento to be crashworthy and free of defects and that would present an unreasonable degree of potential harm or danger to others.

84.     At all relevant times, Kia owed a legal duty to Plaintiff to exercise reasonable care in designing the Sorento to be crashworthy and free of defects and that would present an unreasonable degree of potential harm or danger to others.

85.     At all relevant times, Kia owed a legal duty to Plaintiff to exercise reasonable care in manufacturing the Sorento to be crashworthy and free of defects and that would present an unreasonable degree of potential harm or danger to others.

86.     At all relevant times, Kia owed a legal duty to Plaintiff to exercise reasonable care in assembling the Sorento to be crashworthy and free of defects and that would present an unreasonable degree of potential harm or danger to others.

87.     At all relevant times, Kia owed a legal duty to Plaintiff to exercise reasonable care in testing the Sorento to be crashworthy and free of defects and that would present an unreasonable degree of potential harm or danger to others.

88.     At all relevant times, Kia owed a legal duty to Plaintiff to exercise reasonable care in marketing the Sorento to be crashworthy and free of defects and that would present an unreasonable degree of potential harm or danger to others.

89. At all relevant times, Kia owed a legal duty to Plaintiff to exercise reasonable care in selling the Sorento to be crashworthy and free of defects and that would present an unreasonable degree of potential harm or danger to others.

90. Kia owed a legal duty to exercise reasonable care while Kia's employees performed their duties in the normal course and scope of their employment.

91. Kia's negligence proximately caused Plaintiff's injuries and damages through the wrongful acts and/or omissions enumerated above.

92. Each of the above negligent acts and omissions of Kia, whether taken singularly or in combination, were a direct, proximate, and producing cause of the severe and permanent injuries to Plaintiff and the damages that are described below.

93. Due to Kia's wrongful acts, carelessness, unskillfulness, negligence and gross negligence, Kia should be held liable for the full and fair damages resulting from the severe and permanent injuries to Plaintiff and her damages.

94. Due to Kia's carelessness, Kia should be held liable for the full and fair damages resulting from the severe and permanent injuries to Plaintiff and her damages.

95. Due to Kia's unskillfulness, Kia should be held liable for the full and fair damages resulting from the severe and permanent injuries to Plaintiff and her damages.

96. Due to Kia's negligence, Kia should be held liable for the full and fair damages resulting from the severe and permanent injuries to Plaintiff and her damages.

97. Due to Kia's gross negligence, Kia should be held liable for the full and fair damages resulting from the severe and permanent injuries to Plaintiff and her damages.

98.   Kia is vicariously liable for the negligent acts and omissions, jointly and severally, by and through its agents, servants, and/or employees, acting in the course and scope of their respective employment, individually and/or collectively.

### THIRD CAUSE OF ACTION – MALICE AND GROSS NEGLIGENCE

99.   This is not the first time the front seat of a Kia has collapsed in a rear impact resulting in quadriplegia or death of a perfectly innocent Kia owner or passenger.

100.   Companies that genuinely care about safety will undertake a fair and thorough investigation and root cause analysis of each product failure event.

101.   For many years before the Sorento at issue was manufactured, the list of spinal cord injuries and deaths in Kia vehicles continued to rise as Kia owners and passengers continued to experience enhanced injuries due to seatback failures in rear impacts.

102.   For years, Kia did nothing to stop enhanced injuries due to seatback failures from happening again and again.

103.   Kia did not undertake an objective, root cause analysis of prior seatback failure incidents involving its cars and SUVs.

104.   Each failure to undertake a proper root cause analysis of each reported seatback failure involving cars and SUVs manufactured by Kia was a separate act of negligence.

105.   This negligent and gross negligent conduct by Kia was a proximate cause of the injuries to the Plaintiff.

106.   A proper and thorough root cause analysis of prior seatback failures in Kia cars and SUVs would have prompted engineers and safety conscious individuals within Kia to insist that the seatbacks be fortified to stop the same types of fatal and enhanced injuries from happening again and again.

12

107. The obligation to learn from mistakes and analyze past failures is a duty that engineers and technical employees within an auto maker owe to customers and the public.

108. The duty described in the immediately preceding paragraph was breached by Kia before the manufacture of the Sorento at issue.

109. Kia's breach of the aforementioned duty was a proximate cause of the Plaintiff's injuries and it caused harm to many other occupants of Kia cars and SUVs.

110. Instead of properly and objectively investigating the numerous incidents of Kia cars and SUV seatback failures that occurred in rear impact crashes between 1992 and 2015, Kia (and other similarly situated automakers), engaged in a systematic pattern of obfuscation in an effort to cloud the minds of both regulators and the public.

111. The scheme undertaken by Kia involved repeatedly hiring specific companies and individuals (that are likely to again appear as retained witnesses for Kia in this case) as so-called "independent consultants" to promote a false narrative about the benefits of "yielding seats" and to disguise the inherent danger associated with seatback collapse.

112. The targets of this systematic effort of obfuscation included NHTSA, as well as juries in product liability cases.

113. Kia colluded through trade associations and industry trade groups with other auto makers to obstruct just consideration of the hazards associated with seats that collapse in rear impact crashes.

114. During the course of this scheme, thousands of otherwise preventable spinal cord injuries and deaths were occurring in rear impact collisions involving Kia cars, SUVs and other vehicles with seatbacks that collapse in rear end collisions.

13

115.  Having recognized the lack of "due care analysis" to support their position on the efficacy of yielding/collapsing seats, Kia and other similarly situated manufacturers began to manipulate the automotive engineering literature with industry supported and sponsored studies and papers.

116.  To enhance the litigation resume of the "independent consultants" chosen to advance the false narrative promoted by Kia and other automakers, the consultants' names appear as authors of the industry supported and sponsored papers and studies.

117.  The papers and studies were submitted and accepted for publication in journals of organizations that are beholden to the automakers.

118.  All of the above described conduct was done in an effort to create the "due care analysis" for "yielding seats" that had been lacking.

119.  These studies and papers did nothing to promote safety, as their sole purpose was to assist the automakers in defending seatback failure cases.  This effort continues to this day.

120.  Quietly, Kia and the other manufacturers have been slowly and steadily increasing the seatback strength of the front seats in their vehicles.

121.  Unfortunately, for the Plaintiff in this case, the pace that Kia undertook on its evolution toward rear impact safety has been too slow and attenuated.

122.  Kia's negligence, gross negligence, collusion, and obfuscation were proximate and producing causes of Plaintiff's spinal cord injury.

123.  Plaintiff would further show that if the seat was intentionally designed to perform the way that it did in this motor vehicle accident, then the designer and manufacturer of the product committed acts of intentional conduct that directly caused the severe and permanent injury to Plaintiff and others on U.S. highways.  Such intentional conduct was a producing cause

14

of the severe and permanent injury to Plaintiff and countless others on U.S. roads and highways.

124. If the seat was intentionally designed to perform as it did in this motor vehicle accident, then the product design was substantially certain to cause death and enhanced injuries in rear end accidents. The intentional conduct resulted in a defective product design that was a producing cause of Plaintiff's spinal cord injury. Substantial certainty is tantamount to intent and allows the court to assume intent as a predicate for imposition of punitive damages.

125. If the seat was intentionally designed to perform as it did in this motor vehicle accident, then Kia's acts and/or omissions are of such character to rise to the level of malice. In that way, the acts and/or omissions of Kia were carried out with a flagrant disregard for the rights of others and with actual awareness on the part of Kia that its acts and/or omissions would, in reasonable probability, result in human death, great bodily injury and/or property damage.

126. If the seat was intentionally designed to perform as it did in this motor vehicle accident, then Kia engaged in acts and/or omissions that, when viewed objectively from the standpoint of Kia at the time of occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

127. If the seat was intentionally designed to perform as it did in this motor vehicle accident, then Kia, its management, and/or employees had actual, subjective awareness of the risk involved in their acts and/or omissions, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others. These acts and/or omissions,

singularly or in combination, constitute malice that proximately caused Plaintiff's enhanced injuries and damages.

128.   Because Kia's acts as described above constitute malice and intent, its conduct justifies imposition of exemplary or punitive damages. Plaintiff herein sues for exemplary damages against Kia.

### FOURTH CAUSE OF ACTION – BREACH OF WARRANTY

129.   All preceding paragraphs are incorporated herein by reference.

130.   Pleading in the alternative, Plaintiff further alleges that the Kia Sorento was expressly and impliedly warranted by Kia to be safe for the use for which it was purchased. In particular, Kia expressly and impliedly warranted that the 2015 Kia Sorento was crashworthy, and that the 2015 Kia Sorento's occupants would be protected from extra and preventable injury.

131.   The 2015 Kia Sorento was neither safe nor fit for the purposes for which it was purchased, nor was it of merchantable quality. As a result, the express and implied warranties mentioned above were breached.

132.   As a direct and proximate result of the breach of warranties, the 2015 Kia Sorento proved to be uncrashworthy at the time of the collision in question, and such failures caused the injuries and damages to Plaintiff set forth herein.

### DAMAGES

133.   Plaintiff was a healthy 50 year old Hispanic female on August 20, 2018.

134.   By virtue of the actions and conduct of Defendants as set forth above, Plaintiff was catastrophically injured in the accident.

135.   Plaintiff's injuries resulted in quadriplegia.

136.    Because of the nature and severity of the injuries sustained, Plaintiff has suffered physical pain and mental anguish.

137.    Because of the nature and severity of the injuries sustained, Plaintiff will, in reasonable probability, continue to suffer physical pain and mental anguish in the future and for the rest of her life.

138.    Because of the nature and severity of the injuries sustained, Plaintiff has suffered physical impairment.

139.    Because of the nature and severity of the injuries sustained, Plaintiff will, in reasonable probability, continue to suffer physical impairment in the future and for the rest of her life.

140.    Because of the nature and severity of the injuries sustained, Plaintiff has suffered disfigurement.

141.    Because of the nature and severity of the injuries sustained, Plaintiff will, in reasonable probability, continue to suffer disfigurement in the future and for the rest of her life.

142.    Because of the nature and severity of the injuries sustained, Plaintiff has required medical treatment in the past.

143.    Because of the nature and severity of the injuries sustained, Plaintiff will, in reasonable probability, require other and additional treatment in the future and for the remainder of her life.

144.    Charges for Plaintiff's medical treatment that have been made in the past and those which will in reasonable probability be made in the future have been and will be reasonable charges made necessary by the seat defect in the Sorento.

145.    As a direct and proximate result of the injuries Plaintiff suffered, she has diminished earning capacity and loss of earnings in the past.

17

146.  As a direct and proximate result of the injuries Plaintiff suffered, Plaintiff will, in reasonable probability, continue to experience a loss of earning capacity and loss of earnings in the future and for the rest of her worklife.

147.  Plaintiff seeks recovery of loss of past and future earnings and earning capacity.

148.  Because Kia's conduct as described above was undertaken willfully, wantonly and with conscious disregard for the consequences, such indifferent conduct constitutes grounds for punitive damages for gross negligence and malice.

149.  Plaintiff seeks exemplary or punitive damages as a result of the gross negligence, malice and intentional conduct described above in an amount to be determined by the jury.

## RESERVATION OF RIGHTS

150.  These allegations against Defendants Kia Motors Corporation and Kia Motors America, Inc. are made acknowledging that this lawsuit is still in its early stages, and investigation, although undertaken, is continuing.

151.  As further investigation is conducted, additional facts will surely be uncovered that may and probably will necessitate further, additional, and/or different allegations, including the potential of adding additional parties or dismissing parties from the case. The right to do so, under Texas law, is expressly reserved.

## PRAYER

For these reasons, Plaintiff prays that upon trial hereof, Plaintiff has and will recover damages as would reasonably and justly compensate her in accordance with the evidence, rules of law, and procedure. In addition, Plaintiff requests the award of pre-judgment and post-judgment interest as allowed by law, and for any other and further relief, both in law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**THE AMMONS LAW FIRM, LLP**

Robert E. Ammons
Texas Bar No. 01159820
Federal Bar No. 11742
Taylor Montgomery
Texas Bar No. 24106326
[*Pro Hac Vice and Application for Admission to be Filed*]
3700 Montrose Blvd.
Houston, Texas 77006
Telephone:    (713) 523-1606
Facsimile:     (713) 523-4159
Email:          rob@ammonslaw.com
Email:          taylor@ammonslaw.com
Email:          joy@ammonslaw.com

19